UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | REPORT AND RECOMMENDATION and DECISION AND ORDER |
| SHAUMYK SANTIAGO, | |
| Defendant. | 20-CR-6101-05-EAW-MJP |

---

**Pedersen, M.J.** On January 20, 2022, the Court held oral argument on Defendant's Omnibus Motion. (ECF No. 483.) The undersigned reserved on the issue of suppression of tangible evidence. For the reasons stated below, the undersigned recommends that the District Court deny Defendant's motion for suppression of physical evidence.

***Suppression of Tangible Evidence Recovered from 4 Florack Street Pursuant to a Search Warrant***

Defendant moves to suppress the evidence recovered from the search of his residence, which was conducted pursuant to a judicial warrant. Probable cause to search a place exists if the issuing judge "make[s] a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The standard is one of "probability, and not a prima facie showing of criminal activity . . . ." *United States v. Travisano*, 724 F.2d 341, 346 (2d Cir. 1983). Probable cause "need not be

based on direct, first-hand, or hard evidence." *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985).

Once a search warrant has been issued, a reviewing court must accord substantial deference to the issuing judicial officer's prior finding of probable cause. The affidavit that supported the application "must be tested and interpreted by . . . courts in a common sense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). The Second Circuit has summarized the principles that should guide a court in reviewing the probable cause determination of the judicial officer who issued the warrant:

> [The reviewing court's] after-the-fact examination of the papers is not to be *de novo* review. It should start with the proposition that the Magistrate's finding of probable cause is entitled to substantial deference. In fact, a search based upon a magistrate's determination will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own. Further, the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of this warrant. This is particularly true in close cases where doubts should be resolved in favor of upholding the warrant.

*United States v. Travisano*, at 341, 345; *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993).

The undersigned issued the search warrant for 4 Florack having found that the affidavit submitted by DEA Special Agent Sabatino Smith established sufficient probable cause that the residence would contain evidence of criminal activity. (Smith Aff. in Supp. of Criminal Comp. and Search Warrants, ¶¶ 26, 125–28, 131–279, 284–300, ECF No. 1.) Placed in the position of having to review its own findings, this Court accords substantial deference to its initial findings.

The Smith Affidavit established sufficient probable cause to believe that 4 Florack contained evidence of drug dealing and other criminal activity. As set forth in the Smith Affidavit, 4 Florack is a location in which many drug transactions and meetings occurred. (Smith Aff., ¶¶ 26, 125–30, 131–279, 284–300.) Smith states that:

> CS-5[1] stated that, in 2019, prior to CS-5 cooperating with the government, he/she had been inside the residence at 4 Florack (Premises 1) and observed a gallon sized bag of heroin and multiple firearms. CS-5 stated that GONZALEZ-RIVERA, "Cholo" (Amante SANTIAGO), and Jonathan CRUZ-VEGA a/k/a "Tego" were at Premises 1 at this time. CS-5 further stated that Premises 1 is the stash location for GONZALEZ-RIVERA and that Cholo lived at the residence at that time. According to CS-5, at present Cholo no longer resides at Premises 1 and his brother Shaumyk currently lives at Premises 1, and GONZALEZ-RIVERA and his associates continue to use this location to traffic and store narcotics

(Smith Aff., ¶¶ 26). Further, coconspirators routinely entered 4 Florack to obtain drugs to conduct sales. On December 10, 2019, Gonzalez-Rivera entered 4 Florack, with Enrique Medina and Joshua Bauer arriving just over an hour later. (Smith Aff., ¶¶ 125–28). Based on Smith's training and expertise, he believes that 4 Florack was being used as a location for Gonzalez-Rivera to disseminate narcotics to Medina and Bauer, who would then tender the narcotics to an unknown party. (*Id.*) The same night, Medina and Bauer returned to 4 Florack, eventually leaving to return to Medina's residence. (Smith Aff., ¶¶ 126–30). Smith states that based on training and experience, Medina and Bauer returned to acquire more narcotics to bring to Medina's residence. (Smith Aff., ¶ 130.)

---

[1] "CS5" is Confidential Source 5, who is described in detail in paragraph 25 of Smith's affidavit.

Smith outlines numerous occasions where the location was surveilled and interactions appearing to be narcotic purchases occurred, all involving the codefendants in this case. (Smith Aff., ¶¶ 131–279.) Based on his expertise and training, Smith believes that the actions taken in each of these instances is indicative of drug purchases and drug trafficking. (*Id.*) The affidavit, in its 454 paragraphs, describes a large drug trafficking organization, and the information alleges shows that 4 Florack Street, Rochester, New York (Premises 1) was the hub of the operation.

Notwithstanding, should the district court find the warrant insufficient, the exclusionary rule does not apply to evidence seized by police who have acted in reasonable reliance on a search warrant that was issued by a neutral magistrate judge, even if the magistrate judge's probable cause determination is incorrect. *United States v. Leon*, 468 U.S. 897, (1984). This exception applies so long as the magistrate judge has not abandoned his neutral role, the officer has not been dishonest or reckless in preparing the affidavit, and there are sufficient indicia of probable cause to permit a reasonable belief in its existence. *Id*. Nothing before the undersigned indicates that Smith provided dishonest information, or was reckless in preparing his affidavit, and the undersigned, who issued the warrant based on the affidavit, did not abandon his neutral role.

Therefore, the undersigned recommends that the District Court find the warrant was proper, and evidence seized from the warrant should not be suppressed. In the alternative, the federal agents who conducted the search acted reasonably in reliance on the warrant.

## SEVERANCE

Pursuant to Rule 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The decision to sever a trial pursuant to Rule 14 is "confided to the sound discretion of the trial court." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). A trial court's decision concerning severance is considered "virtually unreviewable," and the denial of such a motion "will not be reversed unless appellants establish that the trial court abused its discretion." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991) (citation omitted). To successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial." *Id.* "It is well established that a defendant cannot avoid the risks of a joint trial simply because he might have a better chance of acquittal in a separate trial." *United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980).

The party requesting severance must demonstrate substantial prejudice: "When defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 369–70 (E.D.N.Y. 2005) (alteration omitted and quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *see also Cardascia*, 951 F.2d at 482 (in order to successfully challenge the denial of a request for severance, a defendant

5

"must establish prejudice so great as to deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'"). "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Chang An–Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (citation omitted). "That the defendant would have had a better chance of acquittal at a separate trial does not constitute substantial prejudice." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983).

There is a powerful presumption in favor of joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210, 219 n.7 (1987) (citation omitted); *see also Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). The Second Circuit has instructed that "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together...." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citations omitted); *see also United States v. Van Sichem*, No. SS 89 CR. 813 (KMW), 1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990) ("There is a strong

presumption in favor of joint trials for jointly indicted defendants, particularly where, as here, the 'crimes charged involve a common scheme or plan.'") (alteration omitted and quoting *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979)).

Defendant argues the following with regards to why his case should be severed:

65. It would be difficult for a jury to consider possible evidence of each of the co-defendants in this Indictment involving the 4 year time span, particularly when this defendant not named in any specific dated incident within the alleged conspiracy. To date, the voluntary discovery does not identify this defendant as a principal character within the conspiracy nor his participation in any specific sale, possession, trafficking, and/or agreed conduct with any others. Exposure to forced association with others facing substantive evidence would unduly influence the jury and inhibit their fair and impartial determination of the evidence against this defendant. The defendant submits that any jury, struggling with these various dates, person places [sic] and allegations, would face the unwarranted tendency to assume this defendant's mere association with the other parties was sufficient to warrant guilt and the undue prejudicial influence of this potential evidence warrants severance.

66. On the other hand, if this defendant was tried separately, the alleged criminal acts of the other named co-defendants which have nothing to do with relevant proof regarding the Government's case against him, will not be put before the jury, eliminating a dangerous potential for undue prejudice to him. *See*, *Zafiro v. United States*, 506 U.S. 534 (1993); *Gray v. Maryland*, 523 U.S. 185 (1998); *United States v. Baker*, 98 F.3d 330 (8th Cir.), *cert. denied*, 520 U.S. 1179 (1997); *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995); *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979).

67. In this matter, the defendant and other codefendants have antagonistic defenses. Each has been charged collectively within Counts One and Two of the Indictment. At trial, each could be expected to vigorously challenge any attempt by the government to impute the knowledge, participation in or facilitation of this alleged possession or actions demonstrating distribution. Again, the voluminous voluntary discovery to date demonstrates excessive evidence of video surveillance, wiretaps, cell phone calls, and property collected via search warrants connected directly with the other codefendants. No such evidence to date connects this defendant.

(Defendant's Omnibus Mot. ¶¶ 65–67, ECF No. 483.) None of Defendant's arguments reach the level needed to procure severance.

Defendant states that there is little evidence linking him to the conspiracy, in converse to what he explains about his codefendants. Defendant's main concern, being tried with his codefendants, might actually benefit Defendant as he would appear less culpable as compared to the codefendants. As to the potential for spillover, which is how the undersigned interprets the contentions in paragraph 66, above, the courts have long held that the trial judge can alleviate that concern with proper jury instructions. *United States v. Rivera-Banchs*, No. 20-CR-6046-EAW-MJP-3, 2021 U.S. Dist. LEXIS 215696, at *26 (W.D.N.Y. Nov. 8, 2021) ("It is well established that limiting instructions provided to the jury can be sufficient to militate the risk of prejudice and the undersigned believes that is true in this case.").

Accordingly, the Court denies Defendant's motion to sever his case from his codefendants, as he has not shown that he will be substantially burdened by not being severed from the case.

## CONCLUSION

For the reasons stated above, the Court recommends the District Court deny Defendant's motion (ECF No. 483) to suppress physical evidence. Further, the undersigned denies Defendant's motion to sever.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report

and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order***. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

IT IS SO ORDERED.

DATED:   March 10, 2022
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge